HANSEN, Appellant, v. SCHMIDMAN PROPERTIES, INC., and another, Respondents.*

*April 30—June 5, 1962.*

* Motion for rehearing denied, with $25 costs, on October 2, 1962, WILKIE, J., taking no part.

For the appellant there was a brief and oral argument by *Edward Rudolph* and *Arlo A. McKinnon,* both of Milwaukee.

For the respondents there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes.*

BROWN, C. J. In its memorandum decision the trial court accurately described the premises where the accident occurred and the circumstances of plaintiff's fall:

"The defendants operated a tavern at 2601 West National Avenue in the city of Milwaukee. The tavern building is located at the southwest corner of West National avenue and South Twenty-Sixth street, fronts on the south side of West National avenue, extends south on the east along and adjacent to South Twenty-Sixth street. The lot on which the building is located extends to an alley running in an east-west direction. Between the rear of the tavern and this alley defendants maintain a paved parking area for the convenience of customers. A concrete public sidewalk extends along South Twenty-Sixth street for the entire length of defendants' property to the alley. There is no grass area between the sidewalk, as such, and the curb, as is often the case; here the entire area is a concrete sidewalk from the east side of the building to the curb, that is, up to a point at the rear of the building where the curb is interrupted or flared to form an apron for vehicular access to the driveway. From that point to the alley there is public sidewalk along defendants' property with the sloping apron between the curb line and the sidewalk. The area presents a picture of paved sidewalk from building to curb up to the parking lot; from that point on there is a paved apron and sidewalk. (See Exhibits 2, 3, 4, 5, 7, and 8.) . . .

"On the night in question Mr. Hansen in company with a friend visited defendants' tavern. He parked his car, not in the parking lot, but on South Twenty-Sixth street, south of the driveway. He and his friend left by the side door of the tavern, walked south on the sidewalk; when they reached the driveway to the parking lot Mr. Hansen slipped and fell on some ice which it was determined was on the driveway apron. Mr. Hansen testified that at the time he started walking down the driveway apron intending to go to his car and enter on the left side of the car. The ice was described as a patch about 10 to 14 inches long, about 10 inches wide, about ¼-inch thick in the center, tapering off to about ⅛th of an inch at the ends."

Appellant contends that the accident occurred on defendants' private property. This cannot be sustained. The record shows that on February 22, 1837, the then owners of this and the surrounding area platted the locality as Clark's Addition to the town of Milwaukee. The plat described streets as being 70 feet wide and the owners declare "[we] hereby deed all the land mentioned in said plat for streets, public squares, etc., for the use and purpose therein mentioned." We concur in the decision of the learned trial court that there has been a dedication and conveyance to the public of a street 70 feet in width where the accident took place. This dedication and conveyance have not been altered. Applying these measurements to the ground in question the dedicated street comes to the building line of defendants' premises,—the line of their building and the parking lot in the rear. The place where appellant slipped and fell is in the street and not inside defendants' lot lines. We need not consider plaintiff's argument that defendants' ownership goes to the center of the street and they would take possession if the street was vacated. The spot where plaintiff slipped is presently in the street and the right of the parties must be determined with recognition of that fact.

Next comes plaintiff's contention that the driveway apron is a place of employment under sec. 101.01 (1), the safe-

place statute. In *Miller v. Welworth Theatres* (1956), 272 Wis. 355, 359, 75 N. W. (2d) 286, we determined that:

"The public sidewalk described cannot be translated into an employer's place of employment, because the responsibility of maintaining the sidewalk is not that of defendant; the care and maintenance clearly rests upon the municipality. Sec. 62.17, Stats. It must be recognized that in a state where there is no obligation on the abutting landowner to keep the sidewalk in front of his premises in repair or in a safe condition for public travel, in the absence of a statute or ordinance imposing such duty upon him a defect in the sidewalk not caused by him cannot be charged against him."

This applies here even more clearly when the alleged defect is in the part of the street constructed for use by vehicles and not by pedestrians, such as plaintiff.

Appellant relies on *Schwenn v. Loraine Hotel Co.* (1961), 14 Wis. (2d) 601, 111 N. W. (2d) 495. There the pedestrian fell in a driveway which was within the street lines, and we held the location was a place of employment under the safe-place statute. Although title to the location was in the municipality, *Schwenn* is distinguished from *Miller v. Welworth Theatres, supra,* and from the case at bar by reason of *Schwenn's* peculiar facts. In that case the defendant hotel company and the defendant cab company, for a great many years, exercised complete and exclusive dominion over the area in question. The details of such dominion are given in the opinion of the *Schwenn Case.* In the *Welworth Theatres Case* and in the instant case the record lacks any evidence of such control by defendants over the place of the accident. On the contrary, it appears here that drivers of vehicles, without hindrance by the defendants, used the apron and that portion of the driveway within the street limits in making turnarounds. Absent the element of control of the area, such as Loraine Hotel assumed in *Schwenn*, we find applicable the principles above quoted from *Welworth Theatres, supra.*

Finally, appellant resorts to the common-law doctrine stated in *Carter v. Rockford & Interurban R. Co.* (1911), 147 Wis. 86, 88, 132 N. W. 598:

"The case falls within the well-known principle of law that where one, though not strictly in the legal and exclusive possession of a place, yet uses it for his own benefit and impliedly invites his patrons to use it, he is charged with the duty to keep it in a reasonably safe state of repair."

The principle is also expressed in *Zetley v. Jame Realty Co.* (1924), 185 Wis. 205, 209, 201 N. W. 252:

"Where premises adjoining a public way are so connected with the public way as to indicate a public use, an invitation to so use is implied. In such case the owner is bound to use ordinary care to protect users of such way from personal injury by reason of such use."

In *Carter* a flight of stairs was erected for the convenience of persons entering or leaving the railway premises. The stairs were defective and broke under plaintiff's weight. The principles just quoted were appropriate in that case because the plaintiff was using the stairs as they were intended to be used, and they were unsafe for that purpose. In the instant case the apron was designed for the passage of vehicles. There is no contention that it was unsafe or inadequate for that purpose. If, as plaintiff contends, it was not safe for pedestrians, it was not constructed for the use of pedestrians nor did it appear to be placed there for the accommodation of pedestrians. The situation more nearly resembles that in *Kuhlman v. Vandercook* (1942), 241 Wis. 418, 6 N. W. (2d) 235, where plaintiff was unsuccessful in collecting damages caused by her fall on a shuffleboard court. When she fell she was not playing shuffleboard—she was using the structure as a sidewalk. Through Mr. Justice WICKHEM we said (p. 422):

"Plaintiff was using as a sidewalk a structure which was not erected for that purpose and the safety of which must be

judged by the purposes for which it was constructed. It was not a trap and there is no evidence that the unusual conditions of slipperiness had existed long enough to fix liability upon the lessees if, indeed, there is any liability on their part where a shuffleboard is deliberately used as a sidewalk—a proposition that at least is open to considerable doubt. What has heretofore been said excludes common-law liability for the reasons stated in *Erbe v. Maes, supra.*"

While we have attempted to reply to the principal contentions of plaintiff supporting his claim of actionable negligence on the part of defendants, the problem seems to us to be understood and answered more simply:

Plaintiff did not fall on defendants' property. Probably he fell in a part of the public highway dedicated and actually used for vehicles but, at best, he can only place himself on the public sidewalk, and in the absence of statutory provision (none here) the accident does not impose liability on the owners of the adjoining property.

"In the absence of a statutory provision to the contrary, the owner or occupant of property owes no duty to pedestrians to keep the sidewalk in front of it free from ice and snow coming thereon from natural causes or by the acts of others, or to guard against the risk of accident by scattering ashes, or using other like precautions, and will not be liable in damages to persons injured by reason of any failure to so do. 25 Am. Jur., Highways, p. 803, sec. 522." *Walley v. Patake* (1956), 271 Wis. 530, 534, 74 N. W. (2d) 130.

We conclude that the record here presented no question for the jury. As a matter of law, defendants are not liable for plaintiff's injuries nor can they be made to respond in damages. The trial court was correct in granting the directed verdict.

*By the Court.*—Judgment and amended judgment affirmed.