Mezera and another, Respondents, vs. Pahmeier and others, Appellants.

*December 5, 1950—January 9, 1951.*

For the appellants Fred Puckett and Casualty Reciprocal Exchange there were briefs by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland*.

*Anna Mae Davis* of Madison, for the appellant Fred Pahmeier.

For the respondents there was a brief by *Riley, Riley & Riley,* and oral argument by *Thomas W. Pierce,* all of Madison.

BROADFOOT, J.   The cars driven by Pahmeier and Puckett, respectively, collided at about 4 o'clock p.m. on November 7, 1948, on Highway 12, a few miles east of Madison. The collision occurred at a point where there was a private driveway extending from the north side of the highway to a farm home. At and near the point of collision the concrete portion of the highway was twenty feet in width with a center line. North of the concrete slab there was a shoulder about seven feet in width, and beyond that a drainage ditch. The road runs east and west. It is straight and level for a distance of at least five hundred feet in each direction from the private driveway. Beyond that distance in each direction there is a dip in the highway. It was a cloudy day but the visibility was good and the highway was dry.

Pahmeier testified that he was driving east on the highway and planned to turn left upon the private driveway and go to the farm home to which it led. As he proceeded there were cars in front of him and cars behind him, all going east. He was driving thirty to forty miles per hour. He slowed down sufficiently to permit the cars behind him to pass and when he was about one hundred sixty feet from the driveway he extended his left arm out the window of the car to indicate a left turn and gradually approached the center line of the highway. He started to make his left turn to enter the private

driveway when he was about thirty feet west thereof. He had looked to the east and did not observe any car approaching. He heard no horn, and was struck by the Puckett car as his front wheels cleared the concrete.

His testimony was corroborated by his wife, who was riding with him. She further testified that she first saw the Puckett car when the Pahmeier car was making its left turn. As to the speed of the Puckett car she said it was "pretty fast" and "it had quite a speed on."

Puckett testified that he was driving west upon said highway and upon his own side thereof, at a speed of forty miles per hour; that he had good brakes and could stop his car in about seventy-five feet at the speed he was traveling; that there were no cars proceeding west ahead of him for a considerable distance; that there were four or five cars in a string proceeding east and that all of them were traveling upon the south lane of the highway until Pahmeier made an abrupt left turn and invaded the north lane of the highway; that he did not see Pahmeier signal that he was going to make a left turn; that he was about fifty feet east of the driveway and Pahmeier was about twenty-five or thirty feet west of the driveway when the Pahmeier car started to turn across the center line of the highway; that he sounded his horn, applied his brakes, and turned his car partially upon the shoulder north of the concrete; that he struck the Pahmeier car at a point opposite the private driveway; that after the accident both cars were standing side by side in the drainage ditch north of the highway and both were headed in a northwesterly direction. After the collision both cars were west of the private driveway, the left rear wheel of the Pahmeier car being eighteen feet west of the west edge of the driveway.

A Dane county traffic officer testified that there were black skid marks starting on the north half of the concrete east of the driveway and running westerly for a distance of seventy-five feet to the Puckett car. The officer could not state what

part of the skid mark was made before and what part thereof was made after the impact.

Puckett's testimony was partially corroborated by one George Marking, who stated that he was behind the Pahmeier car before Pahmeier made the left turn. He did not see Pahmeier extend his left arm to signal a left turn. He also testified that Puckett was less than fifty feet east of the driveway when Pahmeier made his left turn.

The appellants contend that Puckett was not negligent as to speed and that in no event could his speed be held to be a cause of the accident. The respondents Mezera admit that Puckett's speed was reasonable up to the time that Pahmeier made his left turn. They contend, however, that after Pahmeier invaded the north side of the highway Puckett was negligent in failing to reduce his speed sooner than he did and that, had he immediately applied his brakes upon seeing the Pahmeier car turn left, he could have stopped in time to avoid a collision. The respondents also contend that the jury could properly infer from some of the testimony that Puckett saw the Pahmeier car when they were more than seventy-five feet apart. In part their argument consists of a statement that Pahmeier made an abrupt left turn and did not travel any farther to the east prior to the collision. This is a physical impossibility, and all of the testimony indicates that he traveled twenty-five or thirty feet east from the time he crossed the center line to the point of the collision.

In the case of *Clark v. McCarthy,* 210 Wis. 631, 635, 246 N. W. 326, this court said :

"Assuming, without deciding, that the contention is sound and that the finding of the jury must be sustained, this finding would not be sufficient, standing alone, to support this judgment. When two cars proceeding upon a highway in opposite directions collide, the speed of either or both vehicles can only contribute to the accident in connection with some circumstance. For example, if the speed of the vehicle contributes to want of control or to its presence on the wrong side of the

highway, it may be considered one of the causes of the collision. It is difficult to see, however, how the mere speed of a vehicle can be a factor in such an accident, provided both cars maintain their proper place on the highway, and provided the highway itself is wide enough to permit them to pass each other without interference. Hence in this case we think the special verdict as to speed will not of itself support the judgment, and that it is necessary that plaintiff also show acts of negligence on the part of the defendant McCarthy which brought him onto the wrong side of the highway."

The facts in this case are very similar to the facts in the case of *Hiddessen v. Kuehn,* 254 Wis. 214, 217, 36 N. W. (2d) 82. In that case the court said:

"However, the jury's finding that Hiddessen was negligent in respect to speed cannot be sustained. The fact that he was driving at forty-five to fifty miles per hour, which was neither unlawful nor negligent on the rural highway under the existing facts and circumstances, while he saw Kuehn approaching on the south half of the roadway and stop his car there and look to the rear out of his side window, did not admit of finding that Hiddessen was negligent in driving forty-five to fifty miles per hour. It was not until Hiddessen,—in keeping his lookout, which the jury rightly found was not negligent—could see Kuehn start to drive across the north lane, that his speed of forty-five to fifty miles per hour, if it had been voluntarily continued by him, could have been considered negligent. When Hiddessen became suddenly and unexpectedly confronted with an emergency by reason of Kuehn's turning abruptly across the north lane, the course and movements of Hiddessen's car from then on could be found to be due to negligence in his management and control of his car; but although the fact that the speed at which he had been lawfully approaching until confronted with the emergency may have made it more difficult for him to manage and control his car, that does not warrant finding that his speed, which theretofore was lawful and permissible, constituted causal negligence. From the time Kuehn negligently turned onto the north lane and was promptly observed by Hiddessen who, in his exercise of due care, immediately took steps to avoid a collision, the whole question was whether

from that time on Hiddessen was negligent in his management and control. *Reynolds v. Madison Bus Co.* 250 Wis. 294, 306, 26 N. W. (2d) 653; and in the determination of that issue the speed of his car was but an incident involved in connection with the evidence in relation to his other acts and conduct in respect to the management and control of his car and the consequences thereof."

The undisputed evidence shows that Puckett was driving at a prudent and reasonable rate of speed until the Pahmeier car invaded his lane of travel. If we substitute the name "Puckett" for the name "Hiddessen" and the name "Pahmeier" for the name "Kuehn" where they appear in the above quotation, we have an excellent statement of the law in this case.

There was ample credible evidence in the record to support the findings of the jury as to the causal negligence of Pahmeier, but the finding that Puckett was causally negligent in respect to speed cannot be sustained.

*By the Court.*—The judgment is affirmed in so far as it awards the plaintiffs recovery against the defendant Pahmeier, and reversed in so far as it awards the plaintiffs recovery against the defendants Puckett and Casualty Reciprocal Exchange. Cause remanded with directions to dismiss the complaint as to the defendants Puckett and Casualty Reciprocal Exchange.