TAYLOR, Respondent, vs. HARDWARE MUTUAL INSURANCE COMPANY, Appellant.

*November 5, 1957—January 10, 1958.*

28

For the appellant there were briefs by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *F. Halsey Kraege* and *W. L. Jackman.*

For the respondent there was a brief and oral argument by *Vaughn S. Conway* and *Kenneth H. Conway,* both of Baraboo.

WINGERT, J.   1. Defendant's contention that as a matter of law Boyle's negligence with respect to speed was not a

cause of the accident, cannot prevail. On Boyle's own testimony he drove at a speed at which he could not stop within the range of his vision. The jury could well have considered that the excessive speed prevented Boyle, when he saw the danger, from slowing down, detouring, or stopping in time to avoid a collision or at least to reduce the force of the impact to a degree where it would have been harmless. In such a case, the negligence with respect to speed is causal. *Jewell v. Schmidt,* 1 Wis. (2d) 241, 249, 83 N. W. (2d) 487; *Gimbel v. Goldman,* 256 Wis. 28, 31, 39 N. W. (2d) 768. As explained in those cases, *Clark v. McCarthy,* 210 Wis. 631, 246 N. W. 326, is not to the contrary.

2. In view of the jury's findings as to the respect in which each driver was negligent or not negligent, we have come to the conclusion that the jury's comparison of negligence in attributing 70 per cent to Boyle and only 30 per cent to plaintiff is so contrary to the great weight of the evidence that a new trial should be ordered in the interests of justice.

We have recently commented on the serious character of the negligence involved in making a left turn across the path of oncoming traffic. *Guptill v. Roemer,* 269 Wis. 12, 19, 68 N. W. (2d) 579, 69 N. W. (2d) 571; *Schwarz v. Winter,* 272 Wis. 303, 309, 75 N. W. (2d) 447. In the present case plaintiff's negligence in that regard was compounded by his utter failure to keep an eye on the Boyle car after he knew it to be rapidly approaching.

Subs. (1) and (5) of sec. 85.18, Stats. 1953, governing left turns, were in effect at the time of the accident and provided that:

"(1) When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have

hereunder. The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first-mentioned vehicle; provided, the driver of the vehicle turning left has given a plainly visible signal of intention to turn as aforesaid.

"(5) The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction, may make such left turn where it is permitted only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision."

The trial court in its charge to the jury stated the provisions of these two subsections, except that properly no reference was made to the first sentence of sub. (1), which had no application to drivers approaching an intersection on the same street from opposite directions. The pertinent part of sub. (1) conferred a right of way on the operator of a vehicle turning left, such as plaintiff, provided he was not driving at an unlawful speed, entered the intersection first, and gave a plainly visible signal of intention to turn left; but even though the driver intending to make the left turn may have had the right of way under sub. (1), he nevertheless was negligent under the provisions of sub. (5) if he attempted to exercise such right of way without affording the approaching vehicle a reasonable opportunity to avoid a collision. See *Hansen v. Storandt,* 231 Wis. 63, 67, 68, 285 N. W. 370, and *Barkdoll v. Wink,* 238 Wis. 520, 523, 524, 300 N. W. 233, where this court rejected the contention that subs. (1) and (5) are to be construed as alternatives.

The jury absolved both plaintiff and Boyle of any negligence with respect to yielding the right of way. This finding as to plaintiff is explainable on the theory that Boyle's unlawful speed, as found by the jury, destroyed any right of way which Boyle would otherwise have had. On the other hand, the jury's findings that plaintiff was not negligent with

respect to giving a visible signal of intention to turn left, and that Boyle was not negligent with respect to failing to yield the right of way, can only be reconciled on the basis that plaintiff did not enter the intersection first. This is because under the instructions given by the trial court with respect to subs. (1) and (5) of sec. 85.18, Stats. 1953, the jury would have had to find Boyle negligent in not yielding the right of way if plaintiff had entered the intersection first, inasmuch as it was found that a plainly visible signal of intention to turn left was given by plaintiff.

In these circumstances the finding by the jury that plaintiff was causally negligent in the manner of making the left turn assumed added significance. The jury, having reached the conclusions it did in making the previously mentioned findings, could not do otherwise than find that plaintiff violated sub. (5) of sec. 85.18, Stats. 1953, in failing to afford a reasonable opportunity to avoid a collision to the rapidly moving Boyle vehicle, which as we have seen, must already have been in the intersection. It appears, therefore, to have been plaintiff's act in turning directly into the path of the closely approaching Boyle car which immediately precipitated the accident.

Several members of the court are of the opinion that the judgment could well be reversed and the complaint dismissed on the ground that plaintiff's negligence was at least equal to 50 per cent of the total aggregate negligence. However, this court has always been hesitant to take the comparison of negligence out of the hands of the jury, particularly where the trial court has declined to do so, and we have concluded that in this very close case it would be more in the interests of justice to grant a new trial, particularly in view of the matter next referred to.

3. We suspect that confusion may have arisen in the minds of the jury from the use of a large diagram received in evidence as Exhibit 1, which contained a plan of Main street

and its intersection with Albert street, and also a profile of Main street to show the hill or incline immediately west of the intersection. Much significance was given to the incline by both parties, Boyle seeking to justify his failure to see plaintiff's car by referring to a "blind spot" where the steepness of the hill prevented his seeing over the crest, and plaintiff (and the trial court in its opinion on motions after verdict) relying on the same theory of a blind spot to support the jury's finding that Boyle was driving too fast, considering his limited range of vision. In that situation, the profile on Exhibit 1 could have misled a jury of people unfamiliar with the interpretation of such charts, because it is highly distorted. Horizontally, it is drawn on a scale of one inch to 30 feet, but vertically the scale is one inch to three feet. The result is to make the incline appear 10 times as steep as it really was, a fact which was not explained to the jury so far as the record discloses. Notwithstanding that the jury had a view of the scene of the accident at the beginning of the trial, the unexplained distortion of the profile could easily have given an exaggerated effect to the argument forcefully advanced by plaintiff's counsel in this court, and no doubt to the jury, that Boyle's vision ahead was so shut off by a virtual "wall" that his negligence in driving even 22 or 23 miles per hour was very great; and on the other hand, it might have impressed the jury unduly with the merits of Boyle's asserted excuse for not having seen plaintiff's car before he, Boyle, was within a few feet of the intersection, and thus may have contributed to the rather surprising finding that Boyle was not negligent with respect to lookout.

*By the Court.*—Judgment reversed, with directions to grant a new trial on the issues other than damages.